# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

―――――――――――――――――――――――― )
)
S.R.C., a minor child, by her next friends,　)
JOHN COBBETT-WALDEN and　　　　　)
JENNIFER LEE LAURENZA　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　Civil Action No. 25-CV-12676-AK
v.　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
STAVERNE MILLER, in her official　　　)
capacity as Commissioner of the MA　　　)
Department of Children and Families,　　)
and DR. KIAME MAHANIAH,　　　　　　)
in his official capacity as Secretary of　　　)
the MA Executive Office of Health &　　　)
Human Services,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　　　)
―――――――――――――――――――――――― )

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**ANGEL KELLEY, D.J.**

Before this Court is Plaintiff's Motion for Temporary Restraining Order turned-Preliminary Injunction [Dkt. 2], Defendants Staverne Miller and Dr. Kiame Mahaniah's ("Defendants") Motion for Reconsideration of the Court's Order Directing Appointment of a Guardian Ad Litem [Dkt. 20], and Defendants' Motion to Dismiss [Dkt. 52]. For the following reasons, Defendants' Motion to Dismiss is **GRANTED**; Plaintiff's Motion for Preliminary Injunction is **DENIED**; and Defendants' Motion for Reconsideration is **DENIED** as moot.

1

## I.    BACKGROUND

This case arises from a juvenile court judge's ruling in a care and protection custody proceeding in Massachusetts Juvenile Court, resulting in an order of custody to the biological father, Esvin O. Gregorio Cabrera ("Mr. Cabrera").[1] [Dkt. 1 ¶¶ 2-3].  S.R.C., a minor child, was removed from her mother's care on May 2, 2021, and was placed into foster care. [Id. ¶¶ 32, 35; dkt. 24 ¶¶ 2, 3].  At that time, Mr. Cabrera, a Guatemalan citizen, was living in Guatemala. [Dkt. 24 ¶ 5].  That month, May 2021, Massachusetts Department of Children and Families ("DCF") identified Mr. Cabrera as S.R.C.'s father and contacted him in Guatemala. [Id. ¶ 6].  In September 2021, Mr. Cabrera came to the United States from Guatemala. [Dkt. 1 ¶ 33].

In January 2022, S.R.C.'s permanency goal was changed from reunification with her family to adoption because her mother was not consistently cooperating with DCF and her father had limited contact with DCF. [Dkt. 24 ¶ 7].  On January 21, 2022, Mr. Cabrera reached out to DCF requesting contact with S.R.C. [Id. ¶ 8].  On February 7, 2022, S.R.C. was placed into foster care with John and Catherine Cobbett-Walden. [Dkt. 1 ¶ 35].  That same month, Mr. Cabrera began supervised visits with S.R.C. [Id. ¶ 41].  Since that time, Mr. Cabrera has engaged with DCF and worked towards gaining custody of his daughter. [Id. ¶ 41; dkt. 24 ¶¶ 10-23].  Following Mr. Cabrera's efforts, DCF changed S.R.C.'s permanency goal from adoption to reunification with her father on May 24, 2024. [Dkt. 1 ¶ 36].

On January 29, 2024, after S.R.C.'s mother failed to engage in services to remedy the conditions that brought S.R.C. into DCF's custody, S.R.C.'s mother's parental rights were officially terminated by order of the Lynn Juvenile Court. [Id. ¶ 32; dkt. 24 ¶ 4].  Mr. Cabrera continued his visits with S.R.C., but later that year, on October 21, 2024, DCF was informed that

---

[1] For any factual disputes, the Court relies upon Plaintiff's articulation of the facts.

Mr. Cabrera was taken into custody by Immigration and Custody Enforcement. [Dkt. 1 ¶ 52; dkt. 24 ¶ 24]. In November 2024, Mr. Cabrera was deported to Guatemala. [Dkt. 24 ¶ 26]. Following his deportation, Mr. Cabrera continued to engage with DCF and work towards obtaining custody of S.R.C. [Dkt. 1 ¶ 59; dkt. 24 ¶¶ 28-35]. On August 26, 2025, DCF was heard on their Motion for Return of Custody of S.R.C. to her father. [Dkt. 24-1, Ex. E at 2 ("Custody Order"); dkt. 24 ¶ 36]. During the hearing, all parties participated, including the foster father, one of the Next of Friends, who initiated this action. Custody Order at 2.

On September 8, 2025, the Juvenile Court granted permanent custody of S.R.C. to Mr. Cabrera. Id. at 7. Because Mr. Cabrera lives in Guatemala, the Juvenile Court stayed its order until S.R.C. was in Mr. Cabrera's physical custody, granted DCF temporary custody of S.R.C., and directed DCF to transition S.R.C. to Mr. Cabrera's custody in Guatemala. Id. at 7-8.

On September 19, 2025, the "next friends" filed this Complaint on behalf of S.R.C. in federal court alleging that DCF's international transportation of Plaintiff violated her rights under the Citizenship and Equal Protection Clauses, and her procedural and substantive due process rights. [Dkt. 1]. The "next friends" representing S.R.C. are Mr. Cobbett-Walden, S.R.C.'s prior foster father, and Jennifer Lee Laurenza, a friend of Mr. and Ms. Cobbett-Walden and licensed therapist (collectively, "the Next Friends"). [Id. ¶¶ 15-24]. That same day, the Next Friends also filed an Emergency Motion for Temporary Restraining Order requesting the Court stop S.R.C.'s transfer to Guatemala. [Dkt. 2].

On September 19, 2025, the Court ordered that S.R.C. not be moved from her current residence, the United States, nor the Commonwealth of Massachusetts and that a Guardian Ad Litem be appointed to represent her in the case. [Dkt. 8]. On September 23, 2025, the parties filed a joint letter to the Court in which DCF agreed that, until the Court issues a decision on the

Motion for Temporary Restraining Order, S.R.C. would not be moved from the United States or Massachusetts. [Dkt. 15].  On September 29, 2025, Defendants filed a Motion to Reconsider the appointment of the Guardian Ad Litem. [Dkt. 20].

Not initially a party, on October 31, 2025, Mr. Cabrera filed a Motion to Intervene [Dkt. 41], which was granted on November 24, 2025. [Dkt. 57].  On November 20, 2025, Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), which reasserted the legal arguments in their Opposition to Plaintiff's Motion for Temporary Restraining Order. [Dkt. 52].  On December 3, 2025, Mr. Cabrera filed his Opposition to Plaintiff's Motion for Temporary Restraining Order, which alleged that the Next Friends lacked standing. [Dkt. 61].

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████  On December 10, 2025, Mr. Cabrera filed a Motion to Expedite the ruling on Plaintiff's Motion for Injunctive Relief. [Dkt. 67].

## II.    DISCUSSION

### A.  Legal Standard

Federal courts are courts of limited jurisdiction, and on a motion to dismiss pursuant to Rule 12(b)(1), the Court must ensure it has the constitutional and statutory authority to adjudicate. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  "The existence of subject-matter jurisdiction 'is never presumed,'" Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005) (quoting Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)), and federal courts "have a duty to ensure that they are not called upon to adjudicate cases which in fact fall outside the jurisdiction conferred by Congress." Esquilín-Mendoza v. Don King Prods., Inc., 638

F.3d 1, 3 (1st Cir. 2011). Courts "must resolve questions pertaining to its subject-matter jurisdiction before it may address the merits of a case." Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir. 2002).

The party asserting federal jurisdiction is responsible for establishing that such jurisdiction exists. Kokkonen, 511 U.S. at 377. Review for dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is "similar to that accorded a dismissal for failure to state a claim pursuant to" Federal Rule of Civil Procedure 12(b)(6). Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). That is, courts construe the complaint "liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences." Id.

### B. Jurisdiction

#### 1. Younger Abstention

The Court does not have jurisdiction over this case because of the Younger Abstention Doctrine. Under that doctrine, federal courts are prohibited from interfering with certain pending state judicial or administrative proceedings. See Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72 (2013). The First Circuit has established a three-step approach for determining whether Younger abstention applies. Sirva Relocation, LLC v. Riche, 794 F.3d 185, 192-93 (1st Cir. 2015). First, courts must decide whether the particular state court proceeding is the type of proceeding to which Younger abstention applies. Id. Then, courts consider whether the Middlesex factors support abstention. Id. And finally, if based upon the first two steps, abstention is appropriate, courts determine whether the case falls under an exception. Id.

### a. Type of Proceeding

The Juvenile Court proceeding at issue implicates the <u>Younger</u> Abstention Doctrine.

<u>Younger</u> abstention applies to (i) criminal prosecutions, (ii) "civil proceedings that are akin to criminal prosecutions," and (iii) proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." <u>Sprint</u>, 571 U.S. at 72-73.  The Supreme Court identified "state-initiated proceeding[s] to gain custody of children" as a type of "civil proceedings that are akin to criminal prosecutions." <u>Id.</u> at 79 (citing <u>Moore v. Sims</u>, 442 U.S. 415, 419-20 (1979)); <u>see also</u> <u>Amadi v. McManus</u>, 16-CV-10861-NMG, 2016 WL 3814597, at *4 (D. Mass. July 11, 2016), <u>aff'd</u>, No. 16-1960, 2017 WL 7048503 (1st Cir. Oct. 16, 2017) (declining jurisdiction over challenge to custody proceedings in Massachusetts Juvenile Court); <u>Liviz v. Supreme Jud. Ct. of Mass.</u>, 17-CV-12345, 2018 WL 1697125, at *2 (D. Mass. Apr. 6, 2018), <u>aff'd</u>, No. 18-1340, 2018 WL 4998135 (1st Cir. Oct. 2, 2018) ("[C]hild welfare and custody proceedings are a qualifying type of proceeding."); <u>Martinez v. Murillo</u>, 25-CV-11667-JEK, 2025 WL 2108907, at *2 (D. Mass. Jul. 28, 2025) ("DCF-initiated child welfare and custody proceeding triggers <u>Younger</u>.") (citation modified).

Here, the Next Friends allege that they do not seek to enjoin the Juvenile Court but rather challenge (1) the use of a United States passport to move S.R.C. from the United States to Guatemala; (2) the international travel during which DCF personnel would accompany S.R.C. to Guatemala, "where S.R.C. has no known legal immigration status, has never been, and does not speak the native language"[2]; and (3) the lack of federal immigration or removal process prior to S.R.C.'s move. [Dkt. 64 at 3, 7].  However, in their Complaint, the Next Friends requested the Court "halt[] all transfer proceedings of the Child, to Guatemala." [Dkt. 1 at 13].  The Juvenile

---

[2] Concerns pertaining to S.R.C.'s immigration status in Guatemala is a matter that should be raised before the Juvenile Court judge who issued the order.

Court judge ordered that S.R.C. "remain in the temporary custody of [DCF] until such time as her Father, Esvin O. Gregorio Cabrera, has physical possession of [her] in Guatemala," and that DCF "submit a written plan of travel to the Court and parties" including "the flight itinerary, identity of passengers traveling with the child, and any other details related to travel." Custody Order at 7. The Juvenile Court judge also ordered that S.R.C. have two months of medications "to travel with [her] to Guatemala" and that S.R.C.'s medical, educational, and custody records be translated to Spanish and "accompany [her] to Guatemala." Id. The request to stop S.R.C.'s transfer is directly in conflict with these sections of the Juvenile Court judge's order.

Additionally, the Next Friends raise factual questions regarding the adequacy of S.R.C.'s legal representation in the Juvenile Court proceeding. [See, e.g., Dkt. 3 ¶ 20; dkt. 4 ¶ 11]. These allegations further demonstrate that, despite the Next Friends contentions otherwise, the Complaint challenges the Juvenile Court proceedings. Because the Next Friends are challenging a state-initiated custody proceeding, they are challenging a proceeding that implicates Younger abstention.

### b. **Middlesex** Factors

The factors enumerated in Middlesex County Ethics Committee v. Garden State Bar Association also favor abstention in this case. 457 U.S. 423 (1982). In Middlesex, the Supreme Court held that federal courts must abstain when there is an ongoing state proceeding to which Younger applies, "which implicates important state interest[s] and provides an adequate opportunity to raise federal defenses." Sirva Relocation, 794 F.3d at 192 (citing Middlesex, 457 U.S. at 432). These factors are not a stand-alone test for whether Younger abstention applies. Sprint, 571 U.S. at 81-82. Instead, they are "*additional* factors appropriately considered by the federal court before invoking Younger." Id. at 81.

The Juvenile Court case is ongoing for three reasons. First, the Next Friends admit that "the Juvenile Court proceeding is not final, but rather is still ongoing." [Dkt. 31 at 4]. Second, the Juvenile Court's order stayed its own final custody determination until Mr. Cabrera had physical custody of S.R.C. and granted temporary custody of S.R.C. to DCF. Custody Order at 7. Mr. Cabrera does not have physical custody of S.R.C. and DCF retains temporary custody of her. Both the "stay" of its final order and the temporary nature of DCF's custody indicate that the Juvenile Court order is not final.

Third, a "proceeding [is] 'ongoing' for Younger purposes until the state appellate process [i]s complete." Maymó-Meléndez v. Álvarez-Ramírez, 364 F.3d 27, 35 (1st Cir. 2004) (quoting Huffman v. Pursue, Ltd., 420 U.S. 592, 607-11 (1975)). The Juvenile Court order is appealable, and S.R.C. can raise federal constitutional issues in a state court appeal. See, e.g., In re Adoption of Willow, 745 N.E.2d 330 (Mass. 2001) (hearing appeal of a juvenile court case on the appellant's claim of a violation of fundamental rights under the Fourteenth Amendment). However, the custody determination has not been appealed.

The Next Friends point out that they were not parties to the underlying state court actions and cannot appeal nor obtain federal constitutional relief there. [Dkt. 64]. That is accurate but belies the point. The issue in this case is not whether the Next Friends' constitutional rights are violated. See Morgan v. Potter, 157 U.S. 195, 198 (1895) (explaining that a next friend is "neither technically nor substantially the party, but resembles an attorney, or a guardian ad litem, by whom a suit is brought or defended in behalf of another"). The issue is whether S.R.C.'s constitutional rights are violated by the Juvenile Court order. Plaintiff, S.R.C., can appeal through her legal representative. See Care & Prot. of Jaylen, 231 N.E.3d 302, 311 (Mass. 2024) (child appealing care and protection decision, in part, on constitutional grounds).

The <u>Middlesex</u> factors also favor abstention because Massachusetts has a "compelling state interest" in protecting children, and "[f]amily relations are a traditional area of state concern." <u>Moore</u>, 442 U.S. at 435.  The Next Friends argue that Massachusetts does not have a compelling state interest because "[t]he authority to remove individuals from the United States rests exclusively with the federal government." [Dkt. 31 at 5].  In support of this argument, the Next Friends rely upon cases from the immigration context.

However, this is not an immigration case.  In the context of custody determinations, state courts regularly order visitation rights over American children to non-citizen parents who live internationally. <u>See, e.g.</u>, <u>In re Marriage of Stern</u>, No. 13-2087, 2015 WL 568584, at *4 (Iowa Ct. App. Feb. 11, 2015) ("[T]he district court should not have prohibited visitation in Israel."); <u>Abouzahr v. Matera-Abouzahr</u>, 824 A.2d 268, 280-81 (N.J. Super. Ct. App. Div. 2003) (upholding grant of visitation to father in Lebanon); <u>Markus v. Markus</u>, 427 N.Y.S.2d 625, 626-27 (N.Y. App. Div. 1980) (granting visitation to Isreal and citing cases).  These custody determinations demonstrate that states retain a strong interest in the welfare of children and families, even where it requires children move outside of the United States.

### c.  Exceptions

Finally, the Court must address whether one of the exceptions to <u>Younger</u> abstention applies.  Abstention is inappropriate where a state proceeding is brought "for the purpose of harassment," if the state forum "provides inadequate protection of federal rights," or if a state statute is "flagrantly and patently violative of express constitutional prohibitions." <u>Sirva Relocation</u>, 794 F.3d at 192.  The Next Friends appear to allege that this case falls under the "extraordinary circumstances" exception to <u>Younger</u>. [Dkt. 64 at 8].  In support, the Next Friends cite a Fourth Circuit case holding the lower court did not abuse its discretion by excepting a case

from <u>Younger</u> abstention because the state adjudicator demonstrated bias. [Dkt. 64 at 8 (citing

<u>Air Evac EMS, Inc. v. McVey</u>, 37 F.4th 89, 102 (4th Cir. 2022))].  The Next Friends do not allege

or provide any evidence of bias in the underlying Juvenile Court proceeding.  Nor do they

provide any other legal basis upon which to conclude that the "extraordinary circumstances"

exception applies.

  Upon careful review of the Complaint, and undisputed facts submitted by Defendants,

there is no indication that any of the <u>Younger</u> exceptions apply.  Therefore, <u>Younger</u> abstention

applies, and this Court does not have jurisdiction over the case.

### 2. <u>Rooker-Feldman</u> Doctrine

  If the Juvenile Court case is final – therefore barring <u>Younger</u> abstention – this Court does

not have jurisdiction under the <u>Rooker-Feldman</u> Doctrine.  Under that doctrine, federal district

courts do not have jurisdiction "over a challenge to a state court judgment to which the

challenger was a party." <u>Miller v. Nichols</u>, 586 F.3d 53, 59 (1st Cir. 2009) (citing <u>Exxon Mobil

Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005)).  The doctrine prevents losing

litigants "from seeking what in substance would be appellate review of the state judgment in a

United States district court, based on the losing party's claim that the state judgment itself

violates the loser's federal rights," as only the Supreme Court has jurisdiction to review the

decision of a state court in civil litigation. <u>Exxon</u>, 544 U.S. at 287.  Notably, <u>Rooker-Feldman</u>

abstention "does not depend on what issues were actually litigated in the state court." <u>Miller</u>, 586

F.3d at 59 (quoting <u>Maymó-Meléndez</u>, 364 F.3d at 33).

  Here, the Next Friends are seeking review of a state judgment, alleging violations of

federal rights.   As previously noted, although the Next Friends claim they do not challenge the

Juvenile Court's custody determination, the relief they seek directly conflicts with the Juvenile

Court order and they challenge the adequacy of S.R.C.'s legal representation in Juvenile Court. The Next Friends also argue that they were not parties in the Juvenile Court proceedings. Again, this is beside the point. The Next Friends are not litigating on their own behalf. They are litigating on behalf of S.R.C., and S.R.C. was a party to the Juvenile Court case. Therefore, this Court also does not have jurisdiction under the <u>Rooker-Feldman</u> Doctrine.

As this Court does not have jurisdiction under either the <u>Younger</u> Abstention Doctrine or, in the alternative, the <u>Rooker-Feldman</u> Doctrine, it will not address the domestic-relations exception to federal court jurisdiction. Similarly, although the Next Friends appear to lack standing, based upon the potential conflict with S.R.C.'s best interest and the First Circuit's holding in <u>Dev. Disabilities Advoc. Ctr., Inc. v. Melton</u>, 689 F.2d 281, 286 (1st Cir. 1982), the Court will not rule on this basis when it lacks jurisdiction over the case on independent grounds. Finally, despite Plaintiff's comment about "punting," the Court declines to address the merits of Plaintiff's Motion for Temporary Restraining Order and Defendant's Motion to Dismiss where it lacks jurisdiction over the claims. <u>See</u> <u>Godin v. Schencks</u>, 629 F.3d 79, 83 (1st Cir. 2010) ("'[A] court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting.'") (quoting <u>In re Recticel Foam Corp.</u>, 859 F.2d 1000, 1002 (1st Cir. 1988)).

## III.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [Dkt. 52] is **GRANTED**; Plaintiff's Motion for Temporary Restraining Order [Dkt. 2] is **DENIED**; and Defendants' Motion for Reconsideration [Dkt. 20] is **DENIED** as moot.

**SO ORDERED.**

Dated: January 9, 2026                                 /s/ Angel Kelley
                                                      Hon. Angel Kelley
                                                      United States District Judge