UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

S.R.C., a minor child, by her next friends,
John Cobbett-Walden and Jennifer Lee Laurenza,

               Plaintiff,

v.

STAVERNE MILLER, in her official capacity as
Commissioner of the Massachusetts Department of
Children and Families; and DR. KIAME
MAHANIAH, in his official capacity as Secretary
of the Executive Office of Health and Human
Services,

               Defendants.

CIVIL ACTION
NO. 1:25-cv-12676-AK

---

**REQUEST FOR HEARING**
**PLAINTIFFS' EMERGENCY MOTION FOR STAY OF REMOVAL OF S.R.C.**
**PENDING  APPEAL**

Now comes the Plaintiff, S.R.C., a minor, by and through her Next Friend, Jennifer Lee

Laurenza, and through undersigned counsel, and respectfully moves this Court for an emergency

stay of the removal of S.R.C. pending appeal of the District Court's Judgment and Order dated

January 9, 2026 (Kelley, J.), pursuant to Federal Rule of Appellate Procedure 8(a) and Federal

Rule of Civil Procedure 62(d).

Plaintiff requests that this Court stay the effect of its January 9, 2026, dismissal order

(Kelley, J.)  and preserve the status quo by preserving in place that portion of its September 19,

2025, Order (Dkt. No. 8) and September 30, 2025, entering a stipulation of the parties as an

injunction which prohibits the Massachusetts Department of Children and Families from

removing S.R.C. from her then current foster placement, the Commonwealth of Massachusetts or

the United States. The Court then modified (by stipulation) the court's September 30, 2025, orders on November 25, 2025, to prevent only S.R.C.'s removal from the Commonwealth and the United States (Dkt. No.59). Plaintiff respectfully requests that this Court issue an injunction to preserve the status quo by prohibiting the Massachusetts Department of Children and Families from removing S.R.C. from the Commonwealth of Massachusetts or the United States, pending expedited appellate review of the dismissal of her federal civil rights action.

Emergency circumstances exist warranting immediate relief in this case where S.R.C. is an eight-year-old United States citizen who was born in Massachusetts and has lived her entire life in the Commonwealth. She has been in the custody of the Massachusetts Department of Children and Families for approximately five years. DCF is prepared to remove her from the United States and send her to Guatemala imminently.

If the Federal Court declines to enter a stay, DCF's removal of S.R.C. from the country would permanently extinguish appellate jurisdiction and render meaningful federal review and relief impossible. Once removed from the United States, S.R.C. would no longer have practical access to the protections of U.S. law or the ability to vindicate her constitutional rights through this appeal.

In addition, immediate removal would place S.R.C.'s safety and wellbeing at substantial risk. S.R.C. is a United States citizen child who has no citizenship, immigration status, or recognized right of residence in Guatemala.

A stay is therefore necessary to preserve the status quo, prevent irreparable harm, and ensure that this Court's dismissal order may be meaningfully reviewed by the Court of Appeals.

I.    **<u>FACTS OF THE CASE</u>**

1. **Status of the Child and Juvenile Court Custody Orders:** S.R.C. is an eight-year-old child, born in Massachusetts and a United States citizen. S.R.C. has special medical, emotional, and medical needs that require intensive treatment and oversight by medical professionals. At the time of S.R.C.'s birth, S.R.C.'s mother was 15 years-old and S.R.C.'s biological father, Esvin Gregoria Cabrera, was age 29. After S.R.C.'s birth, Mr. Cabrera was deported back to his home country of Guatemala.

2. In 2021, the Essex County Juvenile Court placed SRC in the legal custody of the Department of Children and Families subject to the resolution of Care and Protection proceedings. DCF, as legal custodian, placed S.R.C. in the care of Plaintiff, John Cobbett-Walden who served, along with his Wife Cathy Cobbett-Walden, as her foster family and support system for years and who acts here as one of her next friends.

3. At some point in 2023, Mr. Cabrera reentered the United States without being documented at the border and began working again as an undocumented immigrant. In late 2023, Mr. Cabrera briefly returned to Massachusetts and began working with DCF to gain parental rights to S.R.C. until the U.S. government authorities took Mr. Cabrera into custody, and he was again deported in November 2024.

4. In January 2024, the Essex County Juvenile Court entered orders which deemed Mr. Cabrera an unfit parent and Mother's rights were permanently terminated.

5. In September 2025, the Essex County Juvenile Court entered orders which kept S.R.C. in the legal custody of DCF, with a conditional plan for eventual permanent placement with Mr. Cabrera if and when the child relocated to Guatemala. Until that relocation occurs, all custody and decision-making authority remains vested in DCF.

6. **Defendants' Challenged Conduct**: As alleged in the Complaint and in the preliminary-injunction papers that Defendants incorporate into their motion, DCF and EOHHS seek to use administrative protocols to:

   a) Use a United States passport for S.R.C. in order to remove her from the United States to Guatemala, with the intention of legally requiring S.R.C. to permanently reside in Guatemala-where S.R.C. has no known legal immigration status, has never been, and does not speak the native language.

   b) Schedule international travel in which DCF personnel would accompany S.R.C. to Guatemala, where S.R.C. would presumably reside with Mr. Cabrera, who is barred from re-entering the United States.

   c) Proceed administratively (via DCF) without any federal immigration or removal process and over the strong objection of S.R.C. and her Next-Friends who have been a central support system throughout S.R.C.'s tenure in the foster care system.

6. Plaintiffs allege that these executive actions will effectively exile a United States citizen child, severing her existing family and community ties in Massachusetts, and that they have been undertaken without constitutionally adequate procedures and in violation of equal protection guarantees.

7. **Relief Sought**:  Plaintiffs seek prospective declaratory and injunctive relief against state officials in their official capacities. Plaintiffs do not ask this Court to review or overturn the Juvenile Court's care-and-protection judgment or to issue a competing custody order. They ask this Court to declare and enforce federal constitutional limits on what state executive agencies may do to a United States citizen child (using exclusively

administrative means) to strip a child of her rights of citizenship while she remains in their legal custody.

II.  **PROCEDURAL HISTORY**

1. **Federal Civil Rights Action Filed Pursuant to 42 U.S.C. § 1983:** On September 19, 2025, Plaintiff S.R.C., a minor child, by and through her Next Friends John Cobbett-Walden and Jennifer Lee Laurenza, commenced this action in the United States District Court for the District of Massachusetts by filing a Complaint pursuant to 42 U.S.C. § 1983. (Doc No. 1). The Complaint alleged that officials of the Massachusetts Department of Children and Families ("DCF") were violating Plaintiff's federal constitutional rights by effecting an extrajudicial international removal of a United States citizen child without lawful jurisdiction, federal due process, or oversight.

2. **Emergency Motion for Temporary Restraining Order:** Concurrently with the filing of the Complaint, Plaintiff filed an Emergency Motion for Temporary Restraining Order seeking to enjoin DCF from removing Plaintiff from the United States and transferring her to Guatemala. (Doc No.2 ). Plaintiff submitted sworn declarations and supporting materials detailing the imminent risk of international removal and the absence of any lawful custody or immigration framework authorizing such action.

3. **Temporary Injunctive Relief Preserving the Status Quo:** On September 30, 2025, a hearing was held before the Hon. Angel Kelley in the Massachusetts Federal District Court in Boston concerning Plaintiff's emergency motions for injunctive relief. The Court entered an order which continued the parties' prior September 19, 2025 stipulation enjoining DCF from removing S.R.C. from the United States while the federal action was

pending. (Dkt. No.59). That order preserved the status quo and prevented irreparable harm while jurisdictional and abstention issues were briefed.

4.  **Disputes Regarding Guardian ad Litem and Scope of Proceedings:** During late September and October 2025, the parties litigated issues concerning appointment of a guardian ad litem, the scope of injunctive relief, and the procedural posture of the case. Multiple motions, oppositions, and supplemental filings were submitted and addressed by the Court. (Doc Nos. –).

5.  **Motion to Intervene by Biological Father:** On October 31, 2025, the biological father, Esvin O. Gregorio Cabrera, filed a Motion to Intervene. (Doc No. 42). Plaintiff opposed intervention. (Doc No. 50). By Memorandum and Order dated November 24, 2025, the Court allowed the motion to intervene. (Doc No. 57).

6.  **Motions to Dismiss:** On November 20, 2025, and in December 2025, Defendants filed Motions to Dismiss the Complaint, asserting abstention doctrines and lack of federal jurisdiction. (Doc No. 52). Plaintiff thereafter filed oppositions, and full briefing on the motions to dismiss was completed in December 2025.

7.  **Modification of Prior Injunctive Orders:** On November 25, 2025, the Court entered an order granting DCF's motion to amend a prior order to permit intrastate placement changes within Massachusetts, while issues relating to international removal remained contested. (Doc No.59 ).

8.  **Dismissal of Federal Action:** On January 9, 2026, the Court issued a Memorandum and Order granting Defendants' motions to dismiss and dismissing the federal action in its entirety. (Doc No. 72). In that same order, the Court dissolved prior injunctive relief

barring Plaintiff's removal from the United States. Final judgment was entered onto the Federal docket on January 22, 2026.

9. **Notice of Appeal and Emergency Proceedings:** On January 23, 2026, Plaintiff timely filed a Notice of Appeal from the January 9, 2026, Judgment and Order. (Dkt. No. 79). Because DCF may remove Plaintiff from the United States at any time following dissolution of the injunction, Plaintiff now seeks an emergency stay pending appeal to preserve appellate jurisdiction and prevent irreparable harm.

## III.  <u>LEGAL STANDARD</u>

Pursuant to *Nken v. Holder*, 556 U.S. 418, 434 (2009) stay pending appeal is warranted where the movant demonstrates:

1) a likelihood of success on the merits, or at minimum serious legal questions going to the merits;

2) irreparable harm absent a stay;

3) that the balance of equities favors a stay; and

4) that a stay serves the public interest.

These factors are balanced, not rigidly applied. Where irreparable harm is certain and appellate jurisdiction would otherwise be lost, courts routinely grant stays to preserve the status quo pending review.

## IV.  <u>ARGUMENT</u>

1. PLAINTIFF'S CLAIMS IMPLICATE S.R.C.'S FEDERAL RIGHTS AND THE RIGHTS OF CHILDREN IN STATE FOSTER CARE AND WARRANT FEDERAL APPELLATE REVIEW.

It is well established that state court proceedings and state administrative actions may implicate federal rights of United States citizens in a manner that triggers federal jurisdiction and

warrants federal judicial review. Federal courts routinely exercise jurisdiction where state child welfare proceedings intersect with federally protected rights, particularly where Congress has expressly occupied the field or created federal statutory regimes that rely on, but do not defer to, state court determinations.

Two well-recognized examples illustrate this principle: proceedings arising under the Violence Against Women Act ("VAWA") and the federal Special Immigrant Juvenile Status ("SIJS") framework.

**A. Violence Against Women Act (VAWA):** Congress enacted VAWA to provide federal immigration protections to non-citizens who are victims of domestic violence, sexual assault, or related abuse. See 8 U.S.C. § 1154(a)(1)(A)(iii); 8 U.S.C. § 1229b(b)(2). Under VAWA, non-citizen victims may self-petition for immigration relief and may seek cancellation of removal or adjustment of status based on findings that often arise in state court proceedings, including restraining orders, abuse findings, or family court determinations.

Critically, while state courts make predicate factual findings, the ultimate determination of immigration status, relief, and constitutional protections is exclusively federal. State court involvement does not divest federal courts of jurisdiction. To the

contrary, Congress expressly contemplated federal oversight and federal adjudication of rights arising from state court proceedings.

Thus, VAWA demonstrates that when state family or juvenile court proceedings intersect with federally protected rights related to citizenship, residency, or personal liberty, federal jurisdiction is not only appropriate but required.

B. **Special Immigrant Juvenile Status (SIJS):** Similarly, Congress created SIJS to protect undocumented children involved in state child welfare proceedings. See 8 U.S.C. §1101(a)(27)(J); 8 U.S.C. § 1255(h). Under SIJS, state juvenile courts make limited factual findings regarding dependency, parental reunification, and best interests. Those findings are then transmitted to federal immigration authorities, which retain exclusive Federal authority to grant immigration relief.

The SIJS framework is instructive for two reasons.

First, it demonstrates that state juvenile courts routinely make findings that have direct federal immigration consequences, without displacing federal jurisdiction or review.

Second, it underscores that state courts do not have authority to determine immigration status, citizenship, or federal constitutional rights. Their role is limited to factual findings. The federal government retains exclusive authority over immigration, citizenship, and the constitutional consequences that flow from state action.

C. **Application to This Case:** Plaintiff's appeal raises substantial and non-frivolous questions regarding whether the District Court correctly applied Younger abstention and Rooker-Feldman to bar federal review of claims arising from DCF's actions.

Plaintiff does not challenge the Juvenile Court's custody adjudication. Rather, she challenges the conduct of DCF, a state executive agency, in using administrative protocols to effectuate the international removal and permanent relocation of a United States citizen child to a foreign country where the child has no legal status, citizenship, or recognized right of residence. The constitutional injury alleged here arises not from the existence of a custody order, but from DCF's executive implementation of that order in a manner that carries irreversible federal consequences.

Once removed from the United States, a citizen child loses practical access to United States courts and to the protections of federal law. Federal judicial review becomes, as a practical matter, unavailable. Permitting such removal prior to appellate review would shift the burden onto a minor child, relocated to a foreign country where she lacks legal status, governmental oversight, and the ability to advocate for herself, to somehow return to the United States in order to vindicate her constitutional rights. That is not a lawful or reasonable allocation of responsibility, particularly where removal itself would moot federal jurisdiction. See *United States v. Texas*, 719 F. Supp. 3d 640 (W.D. Tex. 2024).

Allowing DCF to effectuate international removals of United States citizen children without federal oversight or review would impermissibly vest a state executive agency with powers functionally equivalent to those exercised by federal immigration authorities, but without any of the constitutional, statutory, or procedural constraints imposed on federal actors. Congress has comprehensively regulated the authority of federal immigration agencies, including through due process protections, judicial review, and express limits on executive discretion. A state agency may not assume comparable

authority over the international movement and legal status of United States citizens through administrative action alone, particularly where such action results in the loss of access to federal courts and constitutional protections.

Permitting abstention in these circumstances would create a regime in which a state executive agency exercises de facto immigration authority over American citizens, insulated from the safeguards that bind federal immigration actors. Such a result raises serious concerns of executive overreach, undermines federal supremacy in matters of citizenship and constitutional rights, and allows state action to evade meaningful federal accountability.

The District Court concluded that federal jurisdiction was lacking because the relief sought "directly conflict[ed]" with the Juvenile Court's custody order and therefore impermissibly interfered with an ongoing state proceeding. That conclusion presents serious appellate questions, including:

1) Whether Younger abstention applies where the challenged conduct is the executive implementation of a custody order that carries irreversible federal constitutional consequences, rather than a challenge to the validity of the custody adjudication itself.

2) Whether the Juvenile Court provides an adequate forum to vindicate federal constitutional claims arising from the extraterritorial removal of a United States citizen child, where the court lacks authority over citizenship, immigration status, or federal due process.

3) Whether abstention is appropriate where state action would moot federal appellate jurisdiction and permanently foreclose meaningful federal review before it can occur.

The District Court expressly declined to reach the merits of Plaintiff's constitutional claims because it found jurisdiction lacking. Those jurisdictional determinations are

reviewed de novo on appeal and present serious legal questions sufficient to satisfy the first factor for a stay pending appeal.

**D. Plaintiff Has Proper Next-Friend Standing, and the District Court's Contrary Conclusion Presents a Serious Appellate Question**

Plaintiff brings this action through next friends pursuant to Federal Rule of Civil Procedure 17(c). Next-friend standing is appropriate where a minor is unable to litigate her own claims and lacks a representative who is both able and willing to protect her federal interests. *Whitmore v. Arkansas*, 495 U.S. 149, 163–64 (1990); *Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 88–89 (1st Cir. 2010).

Those conditions are plainly satisfied here. S.R.C. is an eight-year-old child who cannot access federal court on her own. Her biological father cannot serve as an adequate representative for purposes of Rule 17(c) because he is physically outside the United States, legally barred from re-entering the country, has never exercised custody of S.R.C. within the United States, and seeks an outcome directly adverse to the federal constitutional rights asserted in this action—namely, the child's right as a United States citizen not to be expelled from the country without federal process. A purported representative whose interests conflict with the minor's, or who is structurally unable to vindicate the minor's federal rights, cannot defeat next-friend standing. *Melton*, 689 F.2d at 285; *Sam M.*, 608 F.3d at 89.

At the time this action was filed, Petitioners were S.R.C.'s daily caregivers and/or within her immediate community of support and, the only adults with actual access to her circumstances, her safety needs, and the imminent constitutional injury alleged. Standing is assessed at the moment of filing and cannot be defeated by post-filing changes in custody or placement orchestrated by the defendant state agency. *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 569 n.4 (1992). To hold otherwise would permit state actors to evade federal review by relocating children after suit is filed, which is an outcome federal courts have repeatedly rejected.

Federal courts have also interpreted Rule 17(c) standing liberally in child-welfare cases where minors face structural barriers to accessing federal review and where state systems themselves are the alleged source of the constitutional injury. Courts have recognized next-friend standing for foster parents, caregivers, and advocates where rigid application of custody labels would otherwise insulate state agencies from constitutional accountability. See, e.g., *Developmental Disabilities Advocacy Ctr., Inc. v. Melton*, 689 F.2d 281, 285 (1st Cir. 1982) (rejecting formal guardianship as dispositive where federal rights were at stake); accord cases arising from state child-welfare systems recognizing the necessity of flexible standing doctrines to prevent constitutional claims from being silenced by custodial control.

The District Court's conclusion that next-friend standing was lacking therefore presents a substantial and non-frivolous appellate issue. If the Court of Appeals determines that Petitioners were proper next friends [as federal precedent strongly suggests] the dismissal for lack of jurisdiction cannot stand. This unresolved standing question independently supports issuance of a stay, because allowing S.R.C. to be removed from the United States before appellate review would permanently extinguish the very federal rights Rule 17(c) exists to protect.

Preserving the status quo pending appeal ensures that the Court of Appeals, not executive action, determines whether this child may access federal judicial review at all.

## 2.  PLAINTIFF WILL SUFFER IRREPARABLE HARM IF A STAY ON APPEAL IS DENIED.

In this case, the irreparable harm to S.R.C. is not speculative. It is immediate, directly tangible, catastrophic and permanent.

The District Court acknowledged that the Juvenile Court order directs the Massachusetts Department of Children and Families ("DCF") to complete international travel arrangements to effectuate S.R.C.'s transfer to Guatemala. If DCF is permitted to remove S.R.C. from the United States before federal appellate review can occur, the resulting harm cannot be undone.

### A.  International Removal Would Irreversibly Extinguish Federal Rights and Jurisdiction

The Constitution assigns exclusive authority over citizenship and its legal consequences to the federal government. U.S. Const. art. VI, cl. 2; amend. XIV, § 1. A person born in the United States is a citizen by constitutional right, not legislative grace. That status includes the right to remain within the national territory and to access the protection of federal law absent voluntary relinquishment or lawful criminal sanction.

Federal supremacy forecloses state action that intrudes upon this domain. Congress has enacted comprehensive legislation governing the admission, detention, and removal of non-citizens, but it has provided no mechanism authorizing the expulsion or exile of United States citizens. That omission is deliberate. Citizenship is not conditional on geography, custody status, or administrative convenience, and no state actor may exercise de facto immigration authority over citizens through executive action.

State custody authority, while broad, is domestic in scope. It permits decisions regarding care and placement within the United States, but it does not extend to removing a citizen child from the country, placing her beyond the reach of United States courts, or

14

extinguishing access to federal constitutional protections. When custody is used as the vehicle for international removal, the action ceases to be a matter of family law and becomes a matter of federal constitutional concern.

Permitting a state agency to effectuate the international removal of a United States citizen [under the cover of secrecy provided by Massachusetts state juvenile welfare laws] without federal authorization, process, or review would invert constitutional structure, undermine federal supremacy in matters of citizenship, and allow state action to defeat federal jurisdiction altogether. Where state conduct operates to remove a citizen from the United States and foreclose meaningful access to federal courts, federal jurisdiction is not optional but required, and abstention doctrines cannot be applied to sanction the loss of constitutional rights before appellate review can occur.

**B.  Removal Would Moot the Appeal and Eliminate Any Effective Remedy**

Once S.R.C. is removed from the United States:

- Federal appellate jurisdiction will be effectively extinguished.

- Meaningful federal judicial review will be rendered impossible.

- S.R.C. will lose practical access to United States courts, counsel, and constitutional protections.

- No federal court could compel her return from a foreign sovereign.

Courts recognize irreparable harm where removal of a person from the United States would moot pending judicial proceedings and foreclose meaningful access to federal courts or effective relief. See *Nken v. Holder*, 556 U.S. 418, 435 (2009)(recognizing that removal with irreversible consequences constitutes irreparable harm); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (Loss of constitutional rights for any time period constitutes

15

irreparable injury); *Abbott v. Abbott*, 560 U.S. 1, 22-23 (2010) (acknowledging that international relocation of a child may defeat judicial authority and effective relief).

**C. The Risk to S.R.C.'s Safety and Welfare Is Immediate and Unrecoverable**

S.R.C. is a United States citizen who has no citizenship, immigration status, or recognized right of residence in Guatemala. No foreign governmental authority has accepted responsibility for oversight of her care, safety, or welfare. Unlike interstate placements, no reciprocal child-welfare framework exists to ensure monitoring, supervision, or enforcement of court-ordered protections.

The risk to S.R.C.'s wellbeing is immediate and substantial. No post-appeal remedy could restore her access to federal courts, her constitutional protections, or her lawful presence in the United States once she is removed.

Accordingly, denial of a stay would result in irreparable harm sufficient, standing alone, to warrant emergency relief pending appeal.

**3. THE BALANCE OF EQUITIES STRONGLY FAVORS ISSUANCE OF A STAY ON APPEAL TO PROTECT S.R.C.**

The balance of equities overwhelmingly favors Plaintiff.

Absent a stay, S.R.C. faces permanent displacement from her country of citizenship and loss of access to constitutional protections. By contrast, Defendants suffer no cognizable harm from a temporary stay preserving the status quo pending appellate review.

Plaintiff does not seek to relitigate custody or to interfere with Juvenile Court proceedings. She seeks only to prevent an irreversible act while the legality of that act is reviewed by the Court of Appeals.

Maintaining the status quo preserves the Juvenile Court's authority while protecting against irreversible harm. Proceeding with removal, by contrast, forecloses appellate review entirely.

## 4. ISSUANCE OF A STAY ON APPEAL FAVORS THE PUBLIC'S INTEREST IN FULLY ADJUDICATING THESE FEDERAL ISSUES.

The public interest strongly favors preserving constitutional rights and ensuring meaningful federal judicial review.

The District Court recognized that this case implicates the intersection of child welfare proceedings and federal constitutional claims. The public has a compelling interest in ensuring that United States citizen children are not removed from the country through administrative action without federal due process, oversight, and accountability.

Granting a stay of the removal of S.R.C. promotes respect for the appellate process, prevents mootness, and ensures that serious jurisdictional and constitutional questions are resolved through orderly judicial review rather than by irreversible executive action.

<u>REQUEST FOR HEARING</u>

Pursuant to Local rule 7.1, Plaintiff respectfully requests a hearing on the merits of her Request for Hearing and Emergency Motion For Stay of Removal of SRC From The United States at the Court's earliest convenience.

Respectfully submitted,
S.R.C., a minor child,
by her next friends,
JOHN COBBETT-WALDEN and
JENNIFER LEE LAURENZA,
PLAINTIFFS,

By their attorneys,

*/s/ Kirsten A. Zwicker*
_____

17

Kirsten A. Zwicker, BBO #637834
Anne M. Stevenson, BBO #669431
Conn Kavanaugh Rosenthal Peisch & Ford, LLP
One Federal Street, 15th Floor
Boston, MA 02110
(617) 482-8200
kzwicker@connkavanaugh.com
astevenson@connkavanaugh.com

Dated: January 26, 2026

## LR 7.1 CERTIFICATION

I certify that, in advance of filing this motion, I conferred with counsel for the state-defendants and the intervenor-defendant regarding the relief sought in this motion. Counsel for the state-defendants and the intervenor-defendant indicated that they do not assent to this motion.

*/s/ Andrew R. Dennington*
Andrew R. Dennington

**Dated:  January 26, 2026**

## CERTIFICATE OF SERVICE

I certify that this document, filed through the Court's ECF, system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and that electronic copies will be sent to any counsel indicated as non-registered participants by e-mail on January 26, 2026.

*/s/ Kirsten A. Zwicker*
Kirsten A. Zwicker

4920-2771-1883, v. 1