UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| S.R.C., a minor child, by her next friends, John Cobbett-Walden and Jennifer Lee Laurenza,<br><br>Plaintiff,<br><br>v.<br><br>STAVERNE MILLER, in her official capacity as Commissioner of the Massachusetts Department of Children and Families; and DR. KIAME MAHANIAH, in his official capacity as Secretary of the Massachusetts Executive Office of Health and Human Services,<br><br>Defendants. | No. 1:25-cv-12676-AK |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR STAY OF REMOVAL OF S.R.C. PENDING APPEAL

Defendants—Staverne Miller, in her official capacity as Commissioner of the Massachusetts Department of Children and Families ("the Department" or "DCF"); and Dr. Kiame Mahaniah, in his official capacity as Secretary of the Executive Office of Health and Human Services—oppose Plaintiffs' emergency motion for stay of removal of S.R.C. pending appeal [ECF No. 82] ("Emergency Motion"). Defendants plan to reunite S.R.C. with her biological father in Guatemala, as was ordered to be in the best interest of the Child by the Juvenile Court on September 8, 2025. S.R.C. will be transported to Guatemala as early as **February 5, 2026**, to allow her to reunite with her biological father as soon as possible. Therefore, the Defendants respectfully request a ruling on the Emergency Motion before that date.

1

In opposing the Emergency Motion, Defendants rely upon, and incorporate by reference here, the arguments they have previously made in their Opposition to Plaintiffs' Motion for Temporary Restraining Order [ECF No. 22] ("Opp'n"), and their Memorandum in Support of their Motion to Dismiss [ECF No. 52] ("Mem."), for why Plaintiffs have no likelihood of success on the merits of their claims, and why the Court lacks jurisdiction. In addition, Defendants make the following points.

***First***, Plaintiffs claim they are merely seeking a *stay* pending appeal to preserve the status quo, but they are actually seeking an *injunction* to alter the status quo pending appeal. Since this Court has denied Plaintiffs' motion for a preliminary injunction and dismissed the case for lack of subject-matter jurisdiction, the "status quo" is that DCF is subject to an order from the state Juvenile Court requiring it to reunify the Child, S.R.C., with her biological father in Guatemala. So, the relief requested by Plaintiffs would actually require alteration of the status quo. It would require an injunction pending appeal to obtain relief that this Court has already denied—*i.e.*, that DCF be stopped from complying with the Juvenile Court's order directing the agency to reunify S.R.C. with her biological father—until the conclusion of appellate proceedings. *See Nken v. Holder*, 556 U.S. 418, 428 (2009) (discussing the difference between an injunction, "by which a court tells someone what to do or not to do … direct[ing] the conduct of a party, and do[ing] so with the backing of its full coercive powers," and a stay, which "operates upon the judicial proceeding itself … either by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability").

And it would require an injunction from this Court even after the Court has concluded it lacks jurisdiction over the subject matter of the case. *See Godin v. Schencks*, 629 F.3d 79, 83 (1st Cir. 2010) (federal court has obligation to "proceed no further" if it concludes it lacks subject-

matter jurisdiction); *Christopher v. Stanley-Bostitch, Inc.*, 240 F.3d 95, 100 (1st Cir. 2001) (once federal court concludes it lacks subject-matter jurisdiction, it cannot issue any further orders that "go to the merits of the underlying action").

This matters, because as the First Circuit has stated, an injunction pending appeal is a more extreme remedy than a stay pending appeal, and thus a more demanding standard applies:

> When considering a request for injunctive relief pending appeal, we consider the same factors [as those for a stay pending appeal],[1] but the bar is harder to clear. … Obtaining injunctive relief from an appellate court demands a significantly higher justification than a request for a stay pending appeal. This is so because an injunction does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by a lower court.

*Boston Parent Coalition for Academic Excellence Corp. v. School Comm. of City of Boston*, 996 F.3d 37, 44 (1st Cir. 2021) (cleaned up) (quoting *Respect Maine PAC v. McKee*, 562 U.S. 996, 996 (2010); and *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers)). Since Plaintiffs' motion for a preliminary injunction has already been denied, *see* Memorandum & Order on Defendant's Motion to Dismiss and Plaintiffs' Motion for a Preliminary Injunction [ECF No. 77] ("Order") at 11, the Emergency Motion necessarily fails the substantially similar test for a stay pending appeal, and it certainly fails to clear the higher bar for obtaining an *injunction* pending appeal.

---

[1] The standard for a stay pending appeal closely resembles the standard for entitlement to a preliminary injunction. Courts consider "(1) [W]hether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Boston Parent Coalition*, 996 F.3d at 44 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Thus, even if the Court applies the (slightly) more forgiving standard for a stay pending appeal rather than that for an injunction pending appeal, Plaintiffs' motion should still be denied, for all the reasons why this Court denied Plaintiffs' earlier motion for preliminary injunction. *See* Memorandum & Order on Defendant's Motion to Dismiss and Plaintiffs' Motion for a Preliminary Injunction [ECF No. 77] ("Order") at 5-11.

***Second***, regarding Plaintiffs' likelihood of success on the merits, all of Plaintiffs' claims fail as a matter of law, both for lack of jurisdiction, and on the merits. *See* Opp'n at 6-19; Mem. at 3-5. And none of the new points in Plaintiffs' Emergency Motion change that result.

For example, Plaintiffs reiterate their assertion that they have standing, but if anything their lack of standing is even more clear now than it was previously. One of the putative next friends—the former foster father with whom the Department had placed S.R.C.—is no longer in that role, after DCF removed S.R.C. from her placement with the foster father. *See* ECF No. 67, at 3. And in any event, S.R.C.'s former foster father is not a party to the appeal; instead only the "family friend" of S.R.C.'s former foster parents, Jennifer Lee Laurenza, is named in the notice of appeal. *See* ECF No. 79; *see also* Compl. ¶¶ 20-24 (allegations regarding Ms. Laurenza's interest in the case). This Court already expressed serious doubt that these individuals may proceed as "next friends," especially where their interest in halting the reunification of S.R.C. with her biological father in Guatemala is in direct conflict with S.R.C.'s preference, expressed through counsel in the Juvenile Court proceeding, to be reunited with her father. *See* Order at 11. And, since only an unrelated "friend" of S.R.C.'s former foster parents remains as a party to the appeal, any veneer of standing to pursue the case has vanished.[2]

---

[2] Plaintiffs argue that if they had standing at the outset of the case, they need not demonstrate continued standing through the case. Emergency Motion at 12. That is incorrect. To the contrary, a party must demonstrate that they have standing at all stages of litigation, and a court must dismiss the case if a party who previously had standing loses such standing during the pendency of the case. *E.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("Plaintiff must maintain their personal interest in the dispute at all stages of litigation.") (citing *Davis v. Federal Election Comm'n*, 554 U.S. 724, 733 (2008)); *National Ass'n of Gov't Employees, Inc. v. Yellen*, 120 F.4th 904, 909 (1st Cir. 2024) ("[T]he doctrines of standing and mootness … mandate that a plaintiff have a 'personal stake' at the outset of an action (standing) and throughout all stages of review (mootness).") (citations omitted). Though it was highly doubtful that Plaintiffs had standing as "next friends" at the outset of this case, *see Developmental Disabilities Advocacy Ctr., Inc. v. Melton*, 689 F.2d 281, 284-87 (1st Cir. 1982), it is now clear that they utterly lack

(footnote continued on following page)

Next, Plaintiffs cite two federal laws in their Motion that they have not cited previously in this case, seemingly for the suggestion that federal law sometimes requires a federal court to make orders overriding a state-court custody proceeding. Emergency Motion at 8-9. This is wrong. Rather, both statutes cited by Plaintiffs merely allow a federal agency or court to rely upon findings made by a state court (among other possible sources of information) in making some determination under federal immigration law regarding non-citizens. In both instances, under the Violence Against Women Act, 8 U.S.C. § 1154(a),[3] and the adoption of Special Immigrant Juvenile Status ("SIJS") as a classification for juvenile immigrants, *see* 8 U.S.C. § 1101(a)(27)(J), Congress concluded that, as a matter of federal immigration law, it would extend protected immigration status to individuals who could demonstrate their entitlement to protected status through—among other sources—adjudications by state courts.[4] That is entirely

---

standing at this juncture. This would be another reason, beyond the clear lack of subject-matter jurisdiction previously recognized by this Court, for why Plaintiffs have no likelihood of success on the merits.

[3] A VAWA applicant may prove their eligibility (specifically as relevant here that they have been abused by a U.S. Citizen or Legal Permanent Resident) through a variety of methods, including offering evidence in the form of state court orders. 8 U.S.C. § 1154(a); *see also* 8 C.F.R. § 103.2(b)(2)(iii) ("The USCIS will consider any credible evidence relevant to a self-petition filed by a qualified spouse or child of an abusive citizen or lawful permanent resident under [the relevant provisions of VAWA]. … The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of USCIS.").

[4] SIJS is a particularly unhelpful example where the predicate findings necessary to apply for SIJS are made by a juvenile or family court often as part custody proceedings, and the SIJS application process does not alter the custody determinations of that state court. *See* 8 U.S.C. § 1101(a)(27)(J)(i); 8 C.F.R. § 204.11(a); *see also* 8 C.F.R. § 204.11(c) (For the purposes of a qualifying juvenile court order "[t]he juvenile court must have exercised its authority over the petitioner as a juvenile and made the requisite judicial determinations in this paragraph under applicable State law to establish eligibility."). As United States Citizenship and Immigration Services' Policy Manual emphasizes, "USCIS relies on the expertise of the juvenile court in making child welfare decisions and does not reweigh the evidence to determine if the child was subjected to abuse, neglect, abandonment, or a similar basis under state law." USCIS Policy
(footnote continued on following page)

different from this situation—where the Juvenile Court made rulings and orders regarding the custody of S.R.C., a U.S. citizen and resident of Massachusetts. Plaintiffs do not dispute that the Juvenile Court had exclusive jurisdiction to determine the legal custody of the Child after she was determined to be in need of care and protection. *See* G.L. c. 119, § 24. And when a proper state-court proceeding is underway, lower federal courts usually decline to interrupt or override those proceedings, through a variety of doctrines—including *Younger* abstention and *Rooker-Feldman*. *See Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 33 (1st Cir. 2004) ("[W]hen a state judicial proceeding does occur, federal judges usually say that the parties ought to raise all of their claims, defenses and objections. If the parties do, and are permitted to litigate the issues, the judges think that should ordinarily settle the matter, subject to *certiorari* review in the Supreme Court; and if they don't, they should not later come and complain to the federal courts."). That is precisely what this Court correctly did in dismissing this case.

Also, Plaintiffs cling to the assertion they have made throughout this case that they are not seeking to enjoin the Juvenile Court order or proceeding, but instead only DCF's "executive" or "administrative" actions to comply with the Juvenile Court's order. Emergency Motion at 10-11, 13. Just as before, this argument is still legally meritless. Put simply, the challenged DCF actions here are inextricably linked with the Juvenile Court order, because everything DCF has done in this case has been to comply with the Juvenile Court's order to reunify the Child with her fit parent. It is impossible to grant Plaintiffs any kind of meaningful relief in this case without enjoining the Juvenile Court's order, at least temporarily if not permanently. And, if this Court were to enjoin DCF's compliance with the Juvenile Court's order, it would render the Juvenile

---

Manual, Vol. 6, Part J, Ch. 2, *available at* https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-2 (last visited Jan. 27, 2026).

Court order a nullity, since the order is directed at DCF, which currently has temporary legal custody of S.R.C. pending reunification with the biological father; and DCF is the only entity that can comply with the Juvenile Court's order to effectuate the reunification of S.R.C. and her father. As explained in Defendants' Opposition to the preliminary injunction motion, this is the very kind of relief that is barred by *Younger* abstention, the *Rooker-Feldman* doctrine, and the domestic-relations exception to federal court jurisdiction. *See* Opp'n at 7-14; *see also Maymo-Melendez*, 364 F.3d at 34 (in conducting the analysis under *Rooker-Feldman* and similar comity doctrines like *Younger*, "we must pay close attention to the *relief* sought by the federal-court plaintiff") (emphasis in original) (citation omitted).

A final point regarding the merits: Plaintiffs once again erroneously assert that DCF is altering or extinguishing S.R.C.'s citizenship rights, and that this therefore requires some kind of additional federal process. Although the Court was right to decline to reach the merits in light of its lack of subject-matter jurisdiction, the Department emphasizes that S.R.C.'s reunification with father in Guatemala *will not extinguish* her U.S. citizenship rights. DCF agrees with Plaintiffs that the Fourteenth Amendment grants S.R.C. birthright citizenship, *see* Emergency Motion at 14, and the Supreme Court has recognized that a child moved out of the country to live with her parents abroad does not lose her citizenship rights unless and until she reaches adulthood and renounces her citizenship. *Perkins v. Elg,* 307 U.S. 325, 329 (1939) ("It has long been a recognized principle in this country that if a child born here is taken during minority to the country of his parents' origin, where his parents resume their former allegiance, he does not thereby lose his citizenship in the United States provided that on attaining majority he elects to retain that citizenship and to return to the United States to assume its duties."); *see also United States v. Wong Kim Ark*, 169 U.S. 649, 704-05 (1898). Under Plaintiffs' view, either a federal

7

court proceeding, or a federal administrative immigration proceeding, would be required every time parents take their U.S. citizen child abroad to live outside the country. That is not the law, and it is not the law here either merely because DCF has legal custody of the Child until she can be placed with her biological father in Guatemala.

*Third*, because Plaintiffs have no likelihood of success on the merits—which is the "*sine qua non*" of the preliminary injunction inquiry—the remaining injunction or stay factors become "matters of idle curiosity." *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 173 (1st Cir. 2015) (Souter, J.) (citations and internal quotations omitted); *accord Weaver v. Henderson*, 984 F.2d 11, 14 n.5 (1st Cir. 1993) (even "excruciatingly obvious" irreparable harm is "irrelevant" in the absence of likelihood of success on the merits). Thus, Plaintiffs' claim of irreparable harm cannot confer jurisdiction on a federal court where it is otherwise lacking, nor can it make Plaintiffs' claims viable where they are otherwise meritless. Nevertheless, Defendants raise the following points regarding Plaintiffs' claim of irreparable harm, and the balance of the equities in the case.

Plaintiffs claim that S.R.C.'s access to the federal courts will be extinguished once she moves to Guatemala. Emergency Motion at 14-16. To be sure, the claims in this case may well become moot once S.R.C. departs for Guatemala, *see, e.g.*, *Davidson v. Howe*, 749 F.3d 21, 25-26 (1st Cir. 2014), but that does not mean the Child would be unable to access the federal courts.[5] If Father, who lives in Guatemala, was able to access federal court to intervene in this

---

[5] This assumes, of course, that the Child would *choose* to continue to litigate. As noted above, however, given the serious potential conflict between Plaintiffs' desire to halt the reunification of the Child and her biological father, and the Child's position, expressed through counsel in the Juvenile Court, supporting reunification, it is highly doubtful that Plaintiffs are accurately stating or appropriately representing the Child's interests here.

8

matter, *see* ECF No. 57, the Plaintiffs' argument that Child will be barred from access to the federal courts by virtue of her residence in Guatemala is simply inaccurate.

Moreover, Plaintiffs resort to inflammatory and baseless speculation that the Child's welfare would be in jeopardy in Guatemala. *See* Emergency Motion at 16. But these assertions are belied by the Juvenile Court's order, which was based in part on an exhaustive international home study of father's home in Guatemala, which concluded that S.R.C. would be safe and well cared for there. *See* ECF No. 24, Exs. A, B, E (filed under seal).[6]

And, Plaintiffs' claim of irreparable harm and the balancing of the equities completely ignores the harm to Child and the biological father from further delay of reunification that would be caused by an injunction pending appeal. S.R.C. and her biological father have already had their reunification, ordered by the Juvenile Court on September 8, 2025, delayed by almost five months as a result of this case and Plaintiffs' motion for preliminary injunction. Both S.R.C. and her biological father have constitutional rights to be reunified, and this case is only delaying the vindication of those constitutional rights. *Santosky v. Kramer*, 455 U.S. 745, 753-70 (1982) (recognizing biological parents' constitutional right to the custody of their children in the absence of clear and convincing evidence of unfitness); *see also Lassiter v. Department of Soc. Servs.*, 452 U.S. 18, 32 (1981) ("[C]hild-custody litigation must be concluded as rapidly as possible consistent with fairness."); *Custody of Two Minors*, 396 Mass. 610, 611 n.2 (1986) (noting the

---

[6] Plaintiffs claim, without basis, that S.R.C. will have "no citizenship, immigration status, or recognized right of residence in Guatemala." Emergency Motion at 16. But S.R.C. is a U.S. Citizen and the biological child of a Guatemalan citizen. It strains credulity to suggest that she will not have a right of residence or other rights in Guatemala, where her biological father is a citizen and she is in his legal custody. *See, e.g.*, Juan Carlos Salazua, Report on Citizenship Law: Guatemala 10 (2020) (stating that children born abroad to Guatemalan citizens are also considered citizens of Guatemala), *available at* https://cadmus.eui.eu/server/api/core/bitstreams/b248287d-f6b2-5820-ad65-02a2b310c4bb/content (last visited Jan. 27, 2026).

"significant interest in the speedy resolution of custody matters."); *Adoption of Ulrich*, 94 Mass. App. Ct. 668, 673 (2019) (same).  The Emergency Motion should be denied so that DCF can complete the process of complying with the Juvenile Court's order and reunifying S.R.C. with her biological father.

## CONCLUSION

For the reasons set forth above and in Defendants' Opposition to Plaintiffs' Motion for Temporary Restraining Order [ECF No. 22], and their Memorandum in Support of their Motion to Dismiss [ECF No. 52], Plaintiffs' Emergency Motion for a Stay Pending Appeal should be denied.

## STATEMENT REGARDING ORAL ARGUMENT

Defendants respectfully suggest that oral argument is unnecessary on Plaintiffs' Emergency Motion, and creates a risk of further delaying the reunification of the Child with her biological father that was ordered by the Juvenile Court on September 8, 2025.  As noted above, S.R.C. will be transported to Guatemala as early as **February 5, 2026**, to allow her to reunite with her biological father as soon as possible.  The parties are not presenting any new evidence in this motion and opposition that would require explication at a hearing.  And, since the Court has already denied Plaintiffs' motion for preliminary injunction and dismissed the case for lack of jurisdiction, it should deny Plaintiffs' emergency motion on the papers, without a hearing.

        Respectfully Submitted,

        ANDREA JOY CAMPBELL
        ATTORNEY GENERAL

        */s/ Timothy J. Casey*
        Timothy J. Casey (BBO No. 650913)
        Katherine M. Fahey (BBO No. 699003)
        Assistant Attorneys General
        Office of the Attorney General
        One Ashburton Place
        Boston, MA 02108
        617-727-7700
        Katherine.Fahey@mass.gov
        Timothy.Casey@mass.gov

January 28, 2026

## CERTIFICATE OF SERVICE

    I, Timothy J. Casey, certify that this document, filed through the Court's ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and that electronic copies and/or paper copies will be sent to those indicated as non-registered participants by first-class mail on January 28, 2026.

        */s/ Timothy J. Casey*
        Timothy J. Casey
        Counsel for Defendants