**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| S.R.C., a minor child, | ) | |
| by her next friends, | ) | |
| JOHN COBBETT-WALDEN and | ) | |
| JENNIFER LEE LAURENZA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:25-cv-12676-AK |
| | ) | |
| | ) | |
| STAVERNE MILLER | ) | |
| in her official capacity as | ) | |
| Commissioner of the | ) | |
| MA Department of Children and Families, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DR. KIAME MAHANIAH, | ) | |
| in his official | ) | |
| capacity as Secretary of the MA | ) | |
| Executive Office of Health | ) | |
| & Human Services, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**INTERVENOR FATHER'S OPPOSITION TO PLAINTIFFS'**
**EMERGENCY MOTION FOR STAY PENDING APPEAL**

Intervenor-Defendant Esvin O. Gregorio Cabrera ("Father") respectfully opposes Plaintiffs' Emergency Motion for Stay Pending Appeal. The motion should be denied because Plaintiffs cannot satisfy the governing stay standard: they cannot succeed on appeal given this Court's thorough abstention and jurisdictional rulings; their claimed "irreparable harm" is speculative and contradicted by the state court's reunification findings; the equities decisively favor S.R.C.'s reunification with her fit parent; and the public interest weighs against federal interference in ongoing juvenile proceedings and in favor of family integrity and finality.

1

**BACKGROUND**

On January 9, 2026, this Court granted Defendants' motion to dismiss, denied injunctive relief and dissolved prior emergency restraints, holding that *Younger* abstention and *Rooker–Feldman* deprive the Court of jurisdiction because Plaintiffs' suit collaterally attacks an ongoing Massachusetts Juvenile Court custody proceeding and directly conflicts with that court's reunification directive. *See* Doc. 77. The Juvenile Court's self-executing order granted Father permanent custody once physical custody is achieved in Guatemala, directed DCF to prepare and implement a travel plan, and required accompanying medical and records arrangements, actions Plaintiffs seek to halt. *See* Affidavit of Yasmin Pereyra ("First Pereyra Aff."), Ex. E (Juvenile Court Permanent Custody Order dated September 8, 2025 ("Juvenile Court Order"), pp. 6-8) (impounded under the Court's September 29, 2025 electronic order (Doc. 19)). Plaintiffs have delayed that reunification for months, for which all travel arrangements had been finalized, while this suit was pending, causing additional harm to S.R.C. and Father. Now, just a day before S.R.C. was set to fly to Guatemala to be united with Father and her extended family (including a younger sibling), Plaintiffs, who now no longer even have custody of S.R.C., have noticed an appeal and request a stay pending appeal to reimpose restraints on that reunification. *See* Docs. 59, 81-82.

**LEGAL STANDARD**

A stay pending appeal is an "intrusion into the ordinary processes of administration and judicial review" and relief is not granted as "a matter of right." *Rhode Island v. Trump*, 155 F.4th 35, 41 (1st Cir. 2025) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)). Accordingly, Plaintiffs have the burden of proving that they are entitled to the "extraordinary" relief they seek. *See Somerville Pub. Schs. V. McMahon*, 139 F.4th 63, 68 (1st Cir. 2025). Here, they are not so entitled.

**ARGUMENT**

## I.    Plaintiffs cannot succeed on the merits.

This Court's dismissal rests on bedrock jurisdictional doctrines that foreclose Plaintiffs' claims and requested relief.

### A. *Younger* Abstention Applies.

Plaintiffs' federal action would disrupt an ongoing state custody proceeding implicating vital state interests in child welfare, and the Juvenile Court affords an adequate forum for federal claims on the child's behalf through her legal representative and available appellate review, which is why *Younger* abstention applies here. *See Sutter v. Pitts*, 639 F.2d 842, 843-44 (1st Cir. 1981); *Armstrong v. Armstrong*, 508 F.2d 348, 350 (1st Cir. 1974). Plaintiffs' insistence that they "do not challenge" the custody adjudication is belied by their request to halt the transfer that the Juvenile Court specifically ordered DCF to implement; this is the very conflict that triggers abstention. This Court correctly recognized all three Middlesex considerations support abstention in light of the ongoing status of Juvenile Court proceedings, Massachusetts's compelling interest in family relations, and the adequate opportunity to raise federal defenses in the state process. *See Care & Prot. Of Eve*, 496 Mass. 42, 43-44 (2025) (recognizing biological parents' free exercise rights to refuse vaccination for the child, who was in DCF custody, during care and protection proceedings in the juvenile court); *Blixt v. Blixt*, 437 Mass. 649 (2002) (considering constitutional rights of child's grandparents as part of request for visitation by grandparents initiated in probate court); *Case Marie, Inc. v. Superior Court of Puerto Rico*, 988 F2d 252, 262 (1st Cir. 1993) ("Except in the most extraordinary cases, a federal court must presume that state courts . . . are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties.").

**B.** *Rooker-Feldman* **likewise bars jurisdiction.**

*Rooker–Feldman* also independently bars jurisdiction. As this Court noted, this is not an immigration case; instead, Plaintiffs' suit functionally invites federal review and reversal of the Juvenile Court's custody order by enjoining its implementation. As the Court noted, although the "next friends" were not parties to the Juvenile Court case, the real party in interest is S.R.C., who was a party and is represented there. This posture forecloses using federal district court as a forum to collaterally attack the state judgment. *See Miller v. Nichols*, 586 F.3d 53, 59 (1st Cir. 2009) (holding federal courts lack jurisdiction "over a challenge to a state court judgment to which the challenger was a party."). This is especially true given that S.R.C., through her own independent court-appointed counsel in the Juvenile Court, has sought reunification in complete contradiction to what the purported "Next Friend" Plaintiffs claim is in her best interests in this litigation.

**C.  Even if this Court had jurisdiction, Plaintiffs' claims are wholly without merit.**

Plaintiffs' claims lack any merit even if this Court had jurisdiction, which it does not. The state's compliance with a reunification order for a U.S.-citizen child does not "strip a child of her rights of citizenship," and a citizen child remains a citizen regardless of residence abroad. *See Perkins v. Elg*, 307 U.S. 325, 329 (1939); *United States v. Wong Kim Ark.*, 169 U.S. 649, 704-05 (1898).  Plaintiffs also claim, with no factual source (because it is false), that sending S.R.C. to be reunited with Father would be sending her to a foreign country where she "has no legal status, citizenship, or recognized right of residence." *See* Doc. 8 at 10. In truth,  as a child of a Guatemalan citizen, Father, S.R.C. is a Guatemalan citizen according to Article 144 of the Guatemalan Constitution. *See* World Intellectual Property Organization (a United Nations Agency),

*Constitution of the Republic of Guatemala, Guatemala*, WIPO Lex., available at: https://wipolex-res.wipo.int/edocs/lexdocs/laws/en/gt/gt031en.pdf (Accessed: 28 January 2026).[1]

Plaintiffs' procedural due process claim falters also, because the child was represented in Juvenile Court and supported reunification through counsel. Accordingly, S.R.C. has been afforded the "opportunity to be heard at a meaningful time and in a meaningful manner" as due process requires. *See Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). Plaintiffs' equal protection theory fails for lack of comparator, and because DCF is treating this child like any child whose custodial parent resides abroad. *See Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 105-06 (1st Cir. 2015). Finally, the concept of substantive due process supports reunification with a fit parent absent clear and convincing evidence of unfitness, of which none exist here. As the Juvenile Court Order found, Father has stable employment and housing, has identified support to meet each of S.R.C.'s particular needs, and he has the financial resources to support his daughter. *See* Juvenile Court Order at 3-4. In direct contradiction to Plaintiffs' unfounded allegations about Father, the Juvenile Court found that "there is no credible evidence that [Father] cannot keep S.R.C. safe, well-cared for, loved, and happy." *Id.* at 5.

Plaintiffs' stay brief largely rehashes jurisdictional and merits arguments already rejected, asserting federal oversight over "extrajudicial removal," but this Court correctly found those contentions in direct conflict with the Juvenile Court's detailed reunification directive. On this record, Plaintiffs cannot show a likelihood of success or even any serious question sufficient to overcome the Court's jurisdictional holdings. Accordingly, the Court should deny Plaintiffs' request for a stay.

---

[1] The Court may take judicial notice of the terms of the Guatemala Constitution in accordance with Federal Rule of Evidence 201(b) as a "fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Alternatively, the Court could determine S.R.C.'s citizenship rights as a child of a Guatemalan citizen as a question of law under F.R.C.P. 44.1.

## II.    Plaintiffs have not shown irreparable harm absent a stay.

Plaintiffs' irreparable-harm theory can be reduced as follows: their claim is that reunification abroad would "moot" appellate review and cause catastrophic injury by placing the child beyond federal court protection. That framing is incorrect and overstated.

First, the Juvenile Court expressly found Father fit and ordered reunification, after full participation by parties, including testimony from the (now former) foster father, and with the child represented by counsel who supported reunification. The Juvenile Court Order includes concrete safeguards: a DCF travel plan, accompaniment, medical continuity, and records transition. Plaintiffs' abstract assertions of harm cannot overcome these adjudicated findings and protections.

Second, S.R.C.'s relocation for reunification does not "extinguish" U.S. citizenship or federal rights. As all defendants have explained, U.S. citizenship endures regardless of residence; the law provides no concept of "state exile" of a citizen child. Plaintiffs' characterization of reunification as "deportation" is false.

To the extent Plaintiffs argue that removal would moot the appeal, their claimed mootness is speculative and self-created. The proper avenue to challenge the reunification plan, if any, lies in the state process on the child's behalf, not in federal preemption of ongoing juvenile jurisdiction. *Nken*, which Plaintiffs cite, recognizes that removal can, in some contexts, constitute irreparable harm, but here the "removal" is the very reunification the Juvenile Court ordered after finding Father fit. *Nken* does not convert lawful compliance with a state custody judgment into per se irreparable harm. The *Nken* also recognized that "removal . . . is not categorically irreparable," in a case involving removal of an undocumented immigrant. *See Nken v. Holder*, 556 U.S. 418 (2009). In our case, that principle is even stronger, where S.R.C. (1) is not being removed, because she wants to be reunited with her father and neither this litigation nor the Juvenile Court litigation

constitutes deportation proceedings under federal law, and (2) S.R.C. is a United States citizen who **would retain every right to return**.

By contrast, continued delay in reunification inflicts concrete and ongoing harm on both Father and child by prolonging separation in the face of a final fitness adjudication and reunification order. Importantly, Plaintiffs cite no case evidencing that reunification of a United States citizen child with her Father abroad would somehow extinguish S.R.C.'s rights to pursue an action in federal court in the United States. Plaintiffs' citation to *Abbot v. Abbot*, which had to do with the process for returning a child to a custodial parent when the other biological parent removed the child from a country under the Hague Convention on the Civil Aspects of International Child Abduction, is inapposite. *See Abbott v. Abbott*, 560 U.S. 1, 5 (2010). Needless to say, those circumstances do not exist here, where S.R.C. wishes to be reunited with her Father, where there is no other custodial parent deemed fit to raise S.R.C. besides Father, and where the Juvenile Court has ordered reunification.

## III.    The balance of equities strongly disfavors a stay.

Enjoining DCF's compliance with the Juvenile Court's reunification plan materially injures Father's fundamental rights and the child's reciprocal interest in family integrity, both interests repeatedly recognized by courts and highlighted in the Father's intervention papers. *See Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."); *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (explaining the family integrity interest as "perhaps the oldest of fundamental liberty interests recognized").

Plaintiffs, by contrast, seek to preserve an extraordinary federal restraint that this Court has already dissolved for lack of jurisdiction, to block a state-ordered reunification with a fit parent. Their asserted harms are speculative and contradicted by the state court's findings and safeguards, whereas the concrete harm from delay to family integrity is immediate and weighty. On balance, the equities favor denying a stay.

## IV.    The public interest weighs against a stay.

The public interest favors honoring state juvenile court judgments, avoiding federal interference in ongoing child-welfare proceedings, and promoting timely permanency for children consistent with adjudicated parental fitness and constitutional family integrity. This Court recognized Massachusetts's compelling interest in family and child welfare, and the adequacy of the state forum to consider federal issues on the child's behalf. Granting a stay would undermine those interests by reimposing a federal injunction that conflicts with the Juvenile Court's directives and invites further collateral federal oversight of state custody administration.

Plaintiffs' suggestion that only a stay can "preserve the status quo" is also mistaken. The legally operative status quo was set by the Juvenile Court's order granting Father custody and directing DCF to transition the child consistent with a detailed travel and care plan. Plaintiffs' entire action has worked to upend the status quo, and a stay would only prolong that unjust result.

## CONCLUSION

Because Plaintiffs have not carried their burden on any of the stay factors, most critically, likelihood of success and irreparable harm, the Court should deny the Emergency Motion for Stay Pending Appeal.

Respectfully submitted,

ESVIN O. GREGORIO CABRERA,

By his counsel,

Brian K. French (#637856)
Luis A. Vargas Rivera (#710571)
NIXON PEABODY LLP
53 State Street
Exchange Place
Boston, MA 02109
617-345-1000
bfrench@nixonpeabody.com
lvargas@nixonpeabody.com

Dated: January 28, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of January 2026, the above document was served on counsel of record for all parties via email and the CM/ECF system.

Luis A. Vargas Rivera